IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET WATSON and WILLIAM WATSON, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 10-6731 |
| | : | |
| HAVERFORD TOWNSHIP POLICE DEPARTMENT, THE TOWNSHIP OF HAVERFORD, CARMEN D. PETTINE, HARVEY PIKE, STEVEN GILL, and JOHN PILI, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                                                                             June 6, 2011

Presently before the Court is Defendant John Pili's Motion to Dismiss the Amended Complaint of Plaintiffs Janet and William Watson pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied in its entirety.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

This action concerns the alleged unlawful arrest and imprisonment of Plaintiff Janet Watson by members of the Haverford Township Police Department. On November 17, 2008, Ms. Watson was cleaning leaves from her property in Havertown, Pennsylvania, when her neighbor, Defendant Pili, allegedly contacted Haverford Township and the Haverford Township Police Department to direct Defendant John Doe 1 send police officers to her home for the purpose of harassing her. (Am. Compl. ¶¶ 20, 22.) Ms. Watson alleges that she and her

husband, co-Plaintiff William Watson, had a long-standing history with Defendant Pili, who was purportedly employed or formerly employed by Haverford Township. (Id. ¶¶ 15-16.) Plaintiffs aver that Defendant Pili used his influence and position with the Township and Police Department to "harass Plaintiffs with official state action and physical threats," culminating in the events described herein. (Id. ¶ 21.)

According to the facts set forth in the Amended Complaint, at approximately 4:30 p.m. on November 17, Defendant Harvey Pike, a Haverford Township police officer, approached Ms. Watson on her property and stated, "I guess you know I am here because of the problem you are having with your neighbor." (Id. ¶¶ 23-24.) Ms. Watson replied, "Perhaps you mean my neighbor is having a problem with me." (Id. ¶ 25.) Defendant Pike then "became aggressive" and asked Plaintiff for her driver's license. (Id. ¶ 26.) When Ms. Watson inquired several times as to why Defendant Pike asked for her license, he responded by shouting, "Because I'm asking you for it." (Id. ¶ 28.) Ms. Watson informed Defendant Pike that she would retrieve her license from her home. (Id. ¶ 29.)

While inside her home, Plaintiff Watson, fearful and alarmed by Defendant Pike's conduct, dialed 911 and requested help because she was being harassed by a Haverford Township police officer. (Id. ¶¶ 30-31.) While she was speaking with the 911 operator, Defendant Pike entered Plaintiffs' home. (Id. ¶ 32.) According to Ms. Watson, he had no probable cause to do so, nor did he have a search or arrest warrant. (Id. ¶¶ 33-36.) Defendant Pike allegedly approached Ms. Watson, "forcefully ripped the phone from her hand," and said, "I told you I would arrest you if you didn't give me your driver's license." (Id. ¶ 38.) Defendant Pike then began screaming and threw Ms. Watson down to the kitchen table. (Id. ¶ 39.) He "forcefully

2

began pulling[,] bending and striking [Ms. Watson's] arms and upper extremities," and then restrained her arms behind her back with handcuffs, cutting off circulation to her hands. (Id. ¶¶ 40-41.) Ms. Watson's 85-year-old mother was present in the kitchen during the attack. (Id. ¶ 42.) When she asked Defendant Pike why he wanted Ms. Watson's driver's license, he purportedly stated, "Shut up or I will arrest you too." (Id. ¶ 44.)

At some point during the altercation, Defendant Steven Gill, another Haverford Township police officer, entered Plaintiffs' home. (Id. ¶ 45.) Together, Defendants Pike and Gill dragged Ms. Watson to the police car, refusing her request to put on her shoes and coat. (Id. ¶¶ 46-48.) Ms. Watson then became hysterical. (Id. ¶ 49.) She alleges Defendant Pike began screaming only inches from her ear to get in the car, and together with Defendant Gill, forcefully pushed her into the car. (Id. ¶¶ 50-51.) Plaintiffs' neighbors purportedly watched these events transpire. (Id. ¶ 52.)

Ms. Watson was then transported to the Haverford Township Police Department and placed in a jail cell under the control of Defendants John Doe 2 and 3. (Id. ¶ 53.) According to Ms. Watson, she was chained to a bench, not permitted to call her attorney, not given sustenance, not given medical attention for the injuries she sustained at the hands of Defendants Pike and Gill, was forced to beg for toilet paper, and was forced to go to the bathroom "in an area visible to male officers." (Id. ¶¶ 54-58.) At approximately 6:00 p.m. that evening, Plaintiff William Watson arrived at the Police Department to bring his wife shoes and a coat. (Id. ¶ 59.) Defendant John Doe 2 allegedly refused to allow Mr. Watson to see his wife, and did not give the shoes or coat to her. (Id. ¶ 60.) When Mr. Watson inquired as to whether his wife was permitted to make a phone call, Defendant John Doe 2 responded, "That only happens in the movies." (Id.

3

¶ 62.) Mr. Watson returned to the police station at 10:00 p.m. that evening in hopes of speaking with someone else. (Id. ¶ 63.) His request to see his wife was again denied, this time by Defendant John Doe 3. (Id. ¶ 64.)

Ms. Watson remained incarcerated until the following morning, November 18. (Id. ¶ 65.) She was arraigned by a Magisterial District Judge on charges of resisting arrest, obstructing administration of law or other government functions, and disorderly conduct. (Id. ¶ 67.) During her arraignment, Ms. Watson became ill and began to lose consciousness. (Id. ¶ 68.) She was transported by ambulance to the hospital, where she was treated for injuries sustained during her arrest, including injuries to her back and arms resulting from being "forcibly shoved to the kitchen table, restrained, [and] dragged and thrown into the police car" by Defendants. (Id. ¶¶ 70-71.) Ms. Watson alleges that, in addition to these physical injuries, she suffered severe emotional damages, humiliation, embarrassment, and damage to her reputation as a result of these incidents. (Id. ¶ 72.) The Commonwealth of Pennsylvania later withdrew the criminal charges against Plaintiff prior to her preliminary hearing, but a public record of her arrest remains. (Id. ¶¶ 73-74.)

Plaintiffs commenced this action on November 17, 2010 against the Haverford Township Police Department, the Township of Haverford, Chief of Police Carmen Pettine,[1] Harvey Pike, Steven Gill, John Pili, and John Does 1, 2, and 3. In Plaintiffs' Amended Complaint, filed on January 10, 2011, Plaintiff Janet Watson asserts (1) violations of 42 U.S.C. §§ 1983, 1985, and 1988, and her First, Fourth, Fifth, Eight, and Fourteenth Amendment rights against all

---

[1] Plaintiffs voluntarily dismissed Defendant Pettine from this action on February 3, 2011. (Docket No. 15.)

Defendants (id. ¶¶ 75-83); (2) assault and battery against Defendants Pike and Gill (id. ¶¶ 84-87); (3) false imprisonment and arrest against Defendants Pike, Gill, and Does 2 and 3 (id. ¶¶ 88-90); (4) intentional infliction of emotional distress against Defendants Pike, Gill, Does 2 and 3, and Pili (id. ¶¶ 91-94); and (5) negligence against Defendants Pike, Gill, and Does 1 through 3. (Id. ¶¶ 95-100.) Plaintiff William Watson asserts a claim for loss of loss of assistance, companionship, consortium, and society of his wife. (Id. ¶¶ 101-02.) Defendant Pili filed a Motion to Dismiss Plaintiffs' Amended Complaint against him on January 13, 2011. Plaintiffs filed a Response in Opposition on February 3, 2011. The Court now considers Defendant Pili's Motion.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). Federal Rule of Civil Procedure 8 does not call for detailed factual allegations; rather, it requires a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

The Supreme Court has made clear, however, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Instead, the plaintiff must offer "enough facts to state a claim to relief that is plausible on its

5

face." Twombly, 550 U.S. at 570. To do so, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556-57); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (adopting Iqbal's standards).

## III. DISCUSSION

Plaintiffs seek to hold Defendant Pili liable for deprivation of Ms. Watson's civil rights, intentional infliction of emotional distress, and loss of consortium by Mr. Watson. Defendant Pili moves to dismiss all claims against him for failure to allege any actionable conduct on his part. The Court will consider each claim against him in turn.

### A. Whether Plaintiff Janet Watson has Stated a Valid Claim for Constitutional Deprivations by Defendant Pili

In Count I, Ms. Watson alleges that Defendant Pili conspired with local officials to deprive her of her First, Fourth, Fifth, Eight, and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1983, 1985, and 1988.[2] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that she was deprived of a federal constitutional or statutory right under color of law. 42 U.S.C. § 1983; Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010). "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998) (citing McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ., 24 F.3d 519, 524 (3d Cir. 1994) ("State action

---

[2] Defendant challenges Ms. Watson's claim only to the extent it alleges that he conspired with state actors to violate her rights as prohibited by section 1983. As such, the Court will only consider this aspect of the claim.

may be found if the private party has acted with the help of or in concert with state officials.")). Notably, "[a] [p]laintiff's "mere invocation of the term 'conspiracy' is insufficient to satisfy the pleading standards under Twombly." Winston v. Bradford Window Co., No. CIV.A.09-226, 2010 WL 3632707, at *4 (W.D. Pa. Sept. 10, 2010). Rather, the allegations "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Id. (citing Thakar v. Tan, 372 Fed. Appx. 325, 328 (3d Cir. 2010)).

Defendant argues that he cannot be held liable under § 1983 solely based on Ms. Watson's allegations that he called the police on the day in question. Indeed, "[m]erely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." Cooper v. Muldoon, No. CIV.A.05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) (citations omitted). The Court finds, however, that Ms. Watson has provided additional facts enabling the Court to infer the requisite level of collaboration between Defendant Pili and the Haverford Police. She has averred that (1) Defendant Pili and Plaintiffs had an ongoing feud; (2) Defendant held improper influence over the police department via his employment, whether previous or ongoing, with the Township of Haverford; (3) Defendant called the police without justification, when Ms. Watson was lawfully cleaning leaves from her property, to direct them to harass and threaten her; and (4) Defendant Pike stated that he had come to her premises "because of the problem you are having with your neighbor" immediately before engaging in an unprompted verbal and physical attack upon Ms. Watson, with whom he had no previous history.

Defendant Pili cites numerous decisions dismissing § 1983 claims against private parties for lack of collaboration with state actors. As an initial matter, the Court notes that all but one of

those cases were decided at the summary judgment stage and thus relied upon a fully developed factual record. Moreover, in contrast to Ms. Watson's allegations, the plaintiffs in those cases failed to allege the existence of any connection between the private party and state actor from which the court could infer improper influence or collaboration. See Radich v. Goode, 886 F.2d 1391, 1398-99 (3d Cir. 1989) (affirming district court's finding of no conspiracy between police and owners of private parking lot where police arrested abortion protestors when they entered lot; record revealed that owners had merely advised city in advance that they would not be permitting protestors on their private property); Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999) (finding no conspiracy where police exercised independent judgment in responding to private party's legitimate request for assistance in quelling disturbance by customer in company's showroom); King v. Massarweh, 782 F.2d 825, 829 (9th Cir. 1986) (affirming district court's dismissal of 1983 claim against landlord for false arrest and illegal search and seizure of tenants, where tenants alleged only that police arrested them after landlord, subsequent to rent dispute, reported them to police as trespassers); Moore v. Marketplace Rest., Inc., 754 F.2d 1336, 1352 (7th Cir. 1985) (no conspiracy between private business owner and police to unlawfully arrest and imprison anyone owner desired, where private and state actors were found to have had no previous contact with one another); D'Agostino v. New York State Liquor Auth., 913 F. Supp. 757, 769 (W.D.N.Y. 1996) (finding state liquor authority did not conspire with defendant business owner to destroy reputation of plaintiff, a competing business owner, by investigating defendant's complaint against plaintiff; liquor authority performed independent investigation pursuant to standard procedure).

In contrast, Ms. Watson has alleged a previous connection between Defendant and local

8

officials via his employment with the Township, identified a phone conversation during which Defendant allegedly instructed local police to harass her, and averred that police engaged in unprompted verbal and physical abuse immediately after the first officer on the scene stated that he was there as a result of Ms. Watson's problems with Defendant Pili. Drawing all inferences in favor of Ms. Watson, the Court finds that she has alleged a sufficient degree of joint action or improper influence on the part of Defendant Pili to properly plead a conspiracy between himself and local authorities to violate her constitutional rights. Accordingly, the Court declines to dismiss Ms. Watson's civil rights claims against Defendant Pili.

> **B.  Whether Plaintiff Janet Watson has Stated a Valid Claim for Intentional Infliction of Emotional Distress against Defendant Pili**

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a plaintiff must allege that (1) the defendant engaged in "extreme and outrageous" conduct, (2) the "conduct caused [the plaintiff] severe emotional distress," and (3) the defendant "acted intending to cause such distress or with knowledge that such distress was substantially certain to occur." Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001).[3] Courts have defined "extreme and outrageous" quite narrowly, finding that the conduct must "go beyond all possible bounds of decency, and [] be regarded as atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting Field v. Philadelphia Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

---

[3] While the Pennsylvania Supreme Court has not definitively determined the viability of an intentional infliction of emotional distress claim, the Third Circuit has concluded that Pennsylvania law recognizes the tort. See, e.g., Brown, 269 F.3d at 217-19.

9

Defendant Pili argues that he cannot be held liable for such an offense by merely calling the police. To the contrary, the Court reads the Amended Complaint as alleging that Defendant Pili used his influence with the Haverford Township Police Department to cause Plaintiff to be verbally and physically abused, falsely arrested, and wrongly imprisoned and arraigned in retaliation for a history of discord between the neighbors. Ms. Watson alleges that she has suffered both physical and mental injuries from being attacked by her arresting officers, to the point that she had to be transported to the hospital via ambulance during her arraignment. While the standard for asserting a claim for intentional infliction of emotional distress is quite demanding, courts have allowed similar claims to proceed even absent the physical abuse alleged here. See, e.g., Watson v. Abington Twp., No. CIV.A.01-5501, 2002 WL 32351171, at *1, *9 (E.D. Pa. Aug. 15, 2002) (denying dismissal of plaintiffs' claim where defendant police officers falsely arrested one plaintiff, drove another out of business, and arrested and seized items from a third plaintiff using a search warrant they knew to be false); Gilbert v. Feld, 788 F. Supp. 854, 856, 862 (E.D. Pa. 1992) (denying dismissal where defendants allegedly "procured the institution of criminal charges against [plaintiff] by providing false and misleading information to and by concealing information from" the district attorney's office).[4] In light of the severe, unprovoked abuse and multiple civil rights violations Ms. Watson purports to have suffered at the direction of Defendant Pili, the Court finds she has stated a valid claim for intentional infliction of emotional

---

[4] Notably, other Pennsylvania courts have held that defendants who instigate false arrests and imprisonments are not liable for intentional infliction of emotional distress. See, e.g., Mastromatteo v. Simock, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (finding allegations that police officer manufactured facts in criminal complaint and affidavit resulting in extended detention of plaintiff could not sustain a claim for intentional infliction of emotional distress). The Court finds, however, that Plaintiff's allegations of physical and verbal abuse coupled with such false arrest do suggest a level of atrocity sufficient for the claim to proceed.

distress against Defendant. Accordingly, the Court declines to dismiss this claim.

   C.   **Whether Plaintiff William Watson has Stated a Valid Claim for Loss of Consortium**

In Pennsylvania, a loss of consortium claim "is grounded on the loss of a spouse's services after injury." Burns v. Pepsi-Cola Metro. Bottling Co., 510 A.2d 810, 812 (Pa. Super. Ct. 1986). The plaintiff may be compensated in damages for "'whatever of aid, assistance, comfort, and society [one spouse] would be expected to render or bestow upon [the other], under the circumstances and in the condition in which they may be placed.'" Id. (quoting Hopkins v. Blanco, 302 A.2d 855, 856 (Pa. Super. Ct. 1973)). A spouse's consortium claim derives only from the injured spouse's right to recover in tort. Quitmeyer v. Se. Pa. Transp. Auth., 740 F. Supp. 363, 370 (E.D. Pa. 1990) (citing Little v. Jarvis, 280 A.2d 617 (Pa. Super. Ct. 1971)); Pahle v. Colebrookdale Twp., 227 F. Supp. 2d 361, 375 (E.D. Pa. 2002). "Thus, where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive." Quitmeyer, 740 F. Supp. at 370; see also Murray v. Commercial Union Ins. Co., 782 F.2d 432, 438 (3d Cir.1986) (dismissing consortium claim of plaintiff's spouse in absence of tort liability on part of defendants).

Defendant argues that because Plaintiffs have alleged no cognizable claims against him, he cannot be held liable for Mr. Watson's loss of consortium. Given that the Court has declined to dismiss Defendant Pili from the intentional infliction of emotional distress claim,[5] this argument fails. Accordingly, the Court will not dismiss Defendant Pili from Plaintiff William

---

   [5] Notably, "there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights." Quitmeyer, 740 F. Supp. at 370 (citations omitted). Therefore, the Court's analysis of Mr. Watson's loss of consortium claim applies only to the extent it derives from Ms. Watson's claim for intentional infliction of emotional distress.

11

Watson's loss of consortium claim.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to dismiss any claims against Defendant Pili. Consistent with the pleading standards of <u>Twombly</u> and Rule 8(a), Plaintiffs have provided allegations from which the Court can infer an intent on the part of Defendant Pili to conspire with state officials to deprive Ms. Watson of her constitutional rights and cause her physical and emotional harm. Further, based on Ms. Watson's sufficiently pleaded claim for intentional infliction of emotional distress, co-Plaintiff William Watson's derivative claim for loss of consortium may also proceed.

An appropriate Order follows.